IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-38-D
No. 5:20-CV-81-D

| | | |
|---|---|---|
| CAYLE MARCUS COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On March 3, 2020, Cayle Marcus Coleman ("Coleman" or "petitioner") moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 228-month sentence [D.E. 112]. On June 10, 2020, the government moved to dismiss Coleman's motion [D.E. 119] and filed a memorandum in support [D.E. 120]. On July 13, 2020, Coleman responded in opposition [D.E. 122]. As explained below, the court grants the government's motion to dismiss, dismisses Coleman's motion, and denies a certificate of appealability.

I.

On January 23, 2018, pursuant to a written plea agreement, Coleman pleaded guilty to conspiracy to distribute and possess with intent to distribute a quantity of heroin (count one) and possession of a firearm in furtherance of a drug trafficking crime (count eight). See [D.E. 1, 46, 47, 106]. On January 8, 2019, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 98, 100, 101, 107]. The court calculated Coleman's total offense level to be 35, his criminal history category to be IV, and his advisory guideline range to be 235 to 240 months' imprisonment on count one and 60 months' consecutive

imprisonment on count eight. See [D.E. 101] 1; [D.E. 107] 5. After departing down and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Coleman to 168 months' imprisonment on count one and 60 months' consecutive imprisonment on count eight, for a total sentence of 228 months' imprisonment. See [D.E. 100] 3; [D.E. 107] 5–31. Coleman appealed [D.E. 102]. On July 2, 2019, the United States Court of Appeals for the Fourth Circuit enforced the appellate waiver in Coleman's plea agreement and dismissed Coleman's appeal [D.E. 108–10].

In Coleman's section 2255 motion, Coleman argues that he received ineffective assistance of counsel because (1) counsel's initial explanation of the proposed plea agreement differed from the final version of the plea agreement and counsel failed to explain the changes to Coleman; (2) counsel failed to inform Coleman of the length of his potential sentence; (3) counsel signed a non-disclosure form concerning discovery and gave it to prosecutors without first receiving permission from Coleman, depriving Coleman of the opportunity to find exculpatory evidence; and (4) counsel led Coleman to plead guilty to possession of a firearm in furtherance of a drug trafficking offense without advising him "as to the court's duty to apprise him of the nature of the charges including the element of intent." [D.E. 112-1] 2–3, 5. Coleman also argues prosecutorial misconduct because "the government withheld evidence that informant Gregory Barnes fabricated the amount of heroin agreed to have been delivered to [Coleman]." Id. at 4 (emphasis omitted).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v.

Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment,

Coleman must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lee v. United States, 137 S. Ct. 1958, 1967 (2017). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 137 S. Ct. at 1967 (citations and quotation omitted).

Coleman's sworn statements at his Rule 11 proceeding bind him. See, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. LeMaster, 403 F.3d 216, 221–23 (4th Cir. 2005). Those sworn statements show that Coleman affirmed that he was satisfied with the representation he received, that he read the plea agreement and discussed it with his attorney, and that he understood each term in the plea agreement before signing it. See [D.E. 106] 20. Moreover, at the Rule 11 hearing, Coleman affirmed that he

4

understood that any prediction from his lawyer or anyone else as to his actual sentence or any prediction from anyone on any sentencing topic is not binding on the court. Id. at 19. Coleman also signed a plea agreement acknowledging the statutory maximum and mandatory minimum for count one and count eight and mandatory minimum for count eight. See [D.E. 46] 5–7. Accordingly, Coleman has not plausibly alleged "that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Lee, 137 S. Ct. at 1967–69; Hill, 474 U.S. at 59; Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Simply put, Coleman would not have "insisted on going to trial." Hill, 474 U.S. at 59; see Lee, 137 S. Ct. at 1967–69; Strickland, 466 U.S. at 694. Thus, to the extent Coleman seeks to use these arguments to invalidate his guilty plea, Coleman has not plausibly alleged prejudice from his counsel's alleged failure to explain changes to the plea agreement or to inform him of his potential sentence.

As for Coleman's argument that counsel failed to advise him that the court had a duty to inform him of the element of intent, the court did in fact state the element of intent for the crimes to which Coleman pleaded guilty, and Coleman then pleaded guilty in open court. See [D.E. 106] 14–24. Coleman also signed a plea agreement admitting that he intentionally committed the crimes. See [D.E. 46] 5–7. Thus, to the extent Coleman seeks to invalidate his guilty plea, Coleman has not plausibly alleged deficient performance or prejudice from his counsel's alleged failure to advise him of the court's duty to inform him of the element of intent.

Next, Coleman argues that counsel signed a non-disclosure form concerning discovery and gave it to the prosecutors without first receiving permission from Coleman, thereby depriving Coleman of the opportunity to find exculpatory evidence within the discovery. Coleman, however, did not make this claim during his Rule 11 hearing. See [D.E. 106] 11–12. Instead, he expressed

satisfaction with counsel's performance. See id. Coleman also fails to identify the alleged exculpatory evidence he might find. Thus, to the extent Coleman seeks to invalidate his guilty plea, Coleman has not plausibly alleged prejudice from his counsel's signing a non-disclosure form concerning discovery without permission from Coleman.

Alternatively, defense counsel's performance at and leading up to the Rule 11 hearing was reasonable and falls within the wide range of professional performance. Cf. Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or action. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."). Counsel sent Coleman letters where counsel explained why she only provided 285 pages of discovery to Coleman, why she signed a non-disclosure agreement concerning discovery, the consequences of providing all of the discovery to Coleman while incarcerated, and the evidence against Coleman. See [D.E. 112-2] 2; [D.E. 112-3]. Counsel also extensively explained the sentencing process and possible sentencing outcome. See [D.E. 112-2] 2–4. Moreover, at his Rule 11 hearing, Coleman accepted responsibility for conspiring to distribute and possess heroin and possessing a firearm in furtherance of his drug trafficking. Cf. United States v. Gomez-Jimenez, 750 F.3d 370, 378–79 (4th Cir. 2014); United States v. Perry, 560 F.3d 246, 254 (4th Cir. 2009); United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993). On this record, counsel performed reasonably at and leading up to the Rule 11 hearing.

As for Coleman's allegations of prosecutorial misconduct, Coleman procedurally defaulted his claim that the prosecutors engaged in misconduct by withholding evidence that Gregory Barnes fabricated the heroin quantity. Coleman failed to raise this claim on direct appeal. Thus, the general rule of procedural default bars Coleman from presenting this claim under section 2255. See, e.g.,

6

Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Coleman has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged errors about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Accordingly, the claim fails.

After reviewing the claims presented in Coleman's motion, the court finds that reasonable jurists would not find the court's treatment of Coleman's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

II.

In sum, the court GRANTS the government's motion to dismiss [D.E. 119], DISMISSES Coleman's section 2255 motion [D.E. 112], and DENIES a certificate of appealability.

SO ORDERED. This 14 day of July 2021.

JAMES C. DEVER III
United States District Judge

7